**Jacob C. CHAPMAN, Plaintiff,**

v.

**CHRYSLER CORPORATION, Defendant.**

**No. IP 96–1714–C–T/G.**

United States District Court, S.D. Indiana, Indianapolis Division.

April 28, 1999.

John O. Moss, John O. Moss & Associates, Indianapolis, IN, for plaintiff.

Susan B. Tabler, Ice Miller Donadio & Ryan, Indianapolis, IN, for defendant.

Entry Regarding Motion to Disqualify Defense Counsel

TINDER, District Judge.

On April 13, 1999, the Plaintiff filed his Motion to Disqualify Defense Counsel, seeking to disqualify the law firm of Ice Miller Donadio & Ryan ("IMDR") from its

representation of the Defendant because Bradley J. Wilson, an attorney previously associated with the Plaintiff's counsel's law firm, is now associated with IMDR. The Defendant filed its Brief in Opposition to Plaintiff's Motion to Disqualify Defense Counsel on April 20, 1999, with the affidavits of Bradley Wilson, Susan B. Tabler, and Lisa Erb Harrison filed in support.

The Plaintiff moves to disqualify IMDR pursuant to Rule 1.10(a) and (b) of the Rules of Professional Conduct adopted by the Indiana Supreme Court,[1] contending that the rule is one of "imputed disqualification" which requires no showing of bad faith and operates to avoid the appearance of impropriety. The Plaintiff asserts that Attorney Bradley J. Wilson was a former associate with the law firm of Haskin Lauter Cohen & LaRue (the "Haskin firm"), which represents the Plaintiff in the instant action; that Wilson was assigned to work on the instant case from November 24, 1998, until the time he left the Haskin firm; and that Wilson left the Haskin firm to join the labor and employment department of IMDR, the law firm representing the Defendant in the instant action. Plaintiff states that Attorney Wilson is familiar with all of the Plaintiff's attorney-client confidences. The Plaintiff argues that under Rule 1.10 Attorney Wilson would be prohibited from representing the Defendant in this case and, therefore, no attorney at IMDR can represent the Defendant in this matter.

■ As the Defendant contends, the Seventh Circuit has recognized that the imputed disqualification of a law firm may be rebutted by implementation of "specific institutional mechanisms" which prevent the flow of confidences from a "tainted" attorney to his new law firm. See *Cromley v. Board of Educ. of Lockport Twnshp. High Sch.*, 17 F.3d 1059, 1065 (7th Cir. 1994). Cromley teaches that courts in the Seventh Circuit should apply a three-part test when determining whether an attorney should be disqualified. See *Cromley*, 17 F.3d at 1064. First, the court must determine "whether a substantial relationship exists between the subject matter of the prior and present representations." *Id.* If so, then it must determine "whether the presumption of shared confidences with respect to the prior representation has been rebutted." *Id.* If this presumption has not been rebutted, then the court must determine "whether the presumption of shared confidences has been rebutted with respect to the present representation." *Id.* Disqualification is appropriate if this second presumption is not rebutted. See *id.*; see also *LaSalle Nat'l Bank v. County of Lake*, 703 F.2d 252, 255–56 (7th Cir.1983).

The "substantial relationship" part of the test easily is satisfied in the instant case. See *Cromley*, 17 F.3d at 1064–65 ("Because Mr. Weiner's representation of Ms. Cromley before he moved to the Scariano firm is substantially related to his new firm's relationship to the School Board, a 'presumption of shared confidences' arises"). Attorney Wilson is a former associate with the Haskin firm which represents the Plaintiff in this case and, in that capacity, Attorney Wilson was assigned to and performed work for the Plaintiff in the instant case from November 24, 1998, until he left the Haskin firm to join IMDR, which represents the Defendant in this action. Attorney Wilson is presumed to

---

1. The Rule provides:

(a) While lawyers are associated in a firm, none of them shall represent a client if he knows or should know in the exercise of reasonable care and diligence that any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.8(k), 1.9, or 2.2.

(b) When a lawyer becomes associated with a firm, the firm may not represent a person in the same or a substantially related matter if it knows or reasonably should know that that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(b) that is material to the matter.

know the Plaintiff's confidences based on his own prior representation as Plaintiff's counsel. Thus, the only true issue regarding disqualification in this case is whether the presumption of shared confidences has been rebutted with respect to the present representation.

■ *Cromley* instructs that the presumption of shared confidences can be rebutted "by demonstrating that 'specific institutional mechanisms' (e.g., 'Chinese Walls') had been implemented to effectively insulate against any flow of confidential information from the 'infected' attorney to any other member of his present firm." *Cromley*, 17 F.3d at 1065. The following types of institutional mechanisms have been found to be sufficient for this purpose:

> (1) instructions, given to all members of the new firm, of the attorney's recusal and of the ban on exchange of information; (2) prohibited access to the files and other information on the case; (3) locked case files with keys distributed to a select few; (4) secret codes necessary to access pertinent information on electronic hardware; and (5) prohibited sharing in the fees derived from suc h litigation.

*Id.*; see also *LaSalle Nat'l Bank*, 703 F.2d at 259 (describing other approved screening mechanisms). Further, these mechanisms must be employed "as soon as the 'disqualifying event occurred.' " *Id.*

In moving for IMDR's disqualification, the Plaintiff relies on *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263 (7th Cir.1983), but this reliance is misplaced. There, the Seventh Circuit held that the presumption of shared confidences was irrebuttable when an entire law firm changed sides. *Analytica*, 708 F.2d at 1267. The *Analytica* court rejected a per se rule of disqualification. *Id.* at 1266. In doing so, the Seventh Circuit, as in *Cromley*, recognized that an individual attorney who moves to the firm retained by an adversary could "avoid disqualification by showing that effective measures were tak-

en to prevent confidences from being received by whichever lawyers in the new firm are handling the new matter." *Id.* In the instant case, only one attorney, Bradley Wilson, has changed firms. Thus, *Analytica* is not controlling. See *Cromley*, 17 F.3d at 1065 n. 3.

■ The Defendant has rebutted the presumption of shared confidences in the instant case by proving, through the unrebutted affidavits of Attorneys Wilson, Tabler, and Harrison, that effective screening procedures were timely employed and fully implemented. "Uncontroverted affidavits are sufficient rebuttal evidence." *Cromley*, 17 F.3d at 1065. On March 24, 1999, before Attorney Wilson joined IMDR on March 29, 1999, IMDR's Special Counsel, Art Kalleres, sent every member of IMDR an electronic message, entitled "Conflicts Screening System for Bradley Wilson." (Wilson Aff. ¶ 6, Ex. A.) The message advised of Wilson's employment and explained the procedures to be followed to prevent the disclosure of any client confidences relating to Wilson's prior representation. (Id. ¶ 6, Ex. A.) All members of IMDR were directed to "strictly observe" the screening system; not to discuss with Wilson any matter in which the Haskin firm is involved, regardless of whether Wilson had been personally involved in the case while at the Haskin firm; and not to discuss in Wilson's presence anything related to any case involving the Haskin firm. (Id., Ex. A.) Kalleres instructed that Wilson was not to discuss, be involved with, or have access to any information relating to any matter that is or was handled by the Haskin firm. All files involving matters in which the Haskin firm is or was involved were to be maintained in a confidential manner. Such files were to be placed in a file cabinet at the end of each day, Wilson was not allowed access to any information in such files, and the persons working on such files were to take steps to ensure against inadvertent disclosure to Wilson. (Id.) The message directed that all persons were to comply with Indiana

Rules of Professional Conduct, particularly Rules 1.9 and 1.10.(Id.)

The IMDR attorneys personally representing the Defendant in this case, Attorneys Tabler and Harrison reviewed the message from Special Counsel Kalleres. They have abided by all of the mechanisms established by IMDR to screen Attorney Wilson. (Tabler Aff. ¶¶ 4–8; Harrison Aff. ¶¶ 4–9.)

Moreover, on his first day of employment with IMDR, Attorney Wilson was advised of and agreed to follow the mechanisms implemented by IMDR to screen him from cases involving the Haskin firm. (Wilson Aff. ¶¶ 5–9.) He has fully complied with these mechanisms. (Id.¶ 16.) Additionally, no member of IMDR has discussed with him any matter relating to the Haskin firm; (id.¶ 12); no discussions relating to any case in which the Haskin firm is involved have taken place in his presence; (id.¶ 13); he has had no access to any files involving the Haskin firm; (id. ¶ 14); and he has not been involved with or had access to any information relating to any matter handled by the Haskin firm. (Id.¶ 15.) Wilson also has been and is denied access to computerized files and folders on IMDR's computer system which were generated by the labor and litigation sections, unless Byron Myers, a partner in the labor section, or Phil Whistler, a partner in the litigation section, first determines that Wilson may have access in accordance with the "Conflicts Screening System." (Wilson Aff. ¶¶ 10.) Further, Attorney Wilson is paid on salary; thus, he does not directly receive any fees derived from this case. (Id.¶ 11.)

Based on the uncontradicted affidavits of Attorneys Wilson, Tabler, and Harrison, sworn under penalties of perjury, the court finds that the institutional mechanisms timely implemented by IMDR effectively shield any flow of the Plaintiff's confidential information from Attorney Wilson to any other member of IMDR (and effectively shield any flow of confidential information gained through

IMDR's representation of the Defendant in this case to Attorney Wilson). The Defendant has rebutted the presumption of shared confidences with respect to IMDR's present representation of the Defendant. Accordingly, the Plaintiff's motion to disqualify counsel is **DENIED**.